**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **TEXAS STATE TROOPERS ASSOCIATION, INC., a Texas Nonprofit Corporation, and CLAUDE HART, LEE JOHNSON, ANNE JOHNSON, and HERSCHEL HENDERSON** ) ) ) ) ) ) ) | |
| **Plaintiffs,** ) ) | **Case No.1:13-cv-974** |
| ) | |
| **v.** ) ) | |
| **GREG ABBOTT as he is Attorney General of the State of Texas** ) ) ) | |
| **Defendant.** ) | |
| _____ ) | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

### I. NATURE OF THE CASE

1.      This is a civil action wherein Plaintiffs pray for a declaration that Defendant acted under color of state law to deprive Plaintiffs of rights and privileges secured to them by the First, Fifth, and Fourteenth Amendments to the United States Constitution.   Plaintiffs request immediate injunctive relief to protect their rights and preserve the status quo in a separate motion and brief filed concurrent herewith.

2.      Defendants are engaging in a course of intimidation and discrimination against Plaintiffs based on dislike and unpopularity. This may be based on Plaintiffs' support of legislation unfavorable to Defendants, or Plaintiffs' vigorous advocacy on behalf of member troopers, who are employees or retirees of the Texas Department of Public Safety.  Defendants'

dislike of Plaintiffs, however, does not give them the ability to chill constitutionally-protected rights and silence a voice of adversity.

## II. JURISDICTION

3.       Plaintiffs bring this action to redress deprivations by Defendant, acting under color of state law, of certain rights secured to Plaintiffs and others by the First and Fourteenth Amendments to the United States Constitution.

4.       Jurisdiction is therefore conferred upon this Court pursuant to Title 28 U.S.C. § 1331; Title 28 U.S.C. § 1343(a)(3) and (4); and Title 42 U.S.C. § 1983.

## III. VENUE

5.       Venue properly lies with this Court pursuant to Title 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to this claim occurred in the Western District of Texas, Austin Division.

## IV. DECLARATORY RELIEF

6.       Authority for declaratory relief sought herein by Plaintiffs is conferred upon this Court by Title 28 U.S.C. § 2201 and by Rule 57 of the Federal Rules of Civil Procedure.

7.       Plaintiffs are entitled to recovery of attorney's fees and costs in this matter pursuant to Title 42 U.S.C. § 1988.

## V. PARTIES

8.       Plaintiff, The Texas State Troopers Association, Inc. (hereinafter "TSTA"), is a voluntary labor organization of non-supervisory commissioned officers and retirees of the Texas Department of Public Safety (hereinafter "DPS"). (TSTA is not a part of the DPS or of the state government of Texas.  Please visit http://www.txdps.state.tx.us/ for the DPS website.) TSTA's mailing address is 5555 N. Lamar Blvd., Suite D 111, Austin, Texas 78751.

9.     Plaintiffs Herschel Henderson, Lee Johnson, and Anne Johnson are the original members of the board of directors of TSTA.  Plaintiff Lee Johnson is the founder and president of TSTA.  Plaintiffs Lee Johnson and Herschel Henderson are retired Texas State Troopers, having retired from the Department of Public Safety in 1984.  Plaintiffs Lee Johnson and Herschel Henderson are members of TSTA.  They are all residents of the State of Texas.

10.     Plaintiff Claude Hart was employed for 16 years by the Department of Public Safety and has served as executive director of TSTA since 1984.  He is also a member of TSTA. He is a resident of the State of Texas.

11.     Plaintiff TSTA represents the interests of its members who do not appear as named plaintiffs in this case because they are intimidated and fear reprisal, administrative or otherwise, from their supervising officers of the Texas Department of Public Safety, which is the public employer of the rank and file members of the TSTA.  The Department of Public Safety urges members of the public not to support TSTA.  See *infra* page 6, Exhibits D and E.  The disclosure of individual members' identities in this case may discourage membership and therefore threaten the very existence of the organization.  Moreover, the injunctive and declaratory relief sought, "inuring as it would to the benefit of all members, is ideally suited to allowing 'associational standing.'"  *Famillas Unidas v. Briscoe*, 619 F.2d 391, 398 (5th Cir. 1980) (citing *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).

12.     Defendant, Gregg Abbott, is the Attorney General of Texas and is charged by law with the enforcement and administration of Texas Statutes and has an interest in this proceeding and any issues herein. Defendant is named in his official capacity, only.

## VI. FACTUAL ALLEGATIONS

13.     On September 5, 2012, TSTA received a request to examine records from the Office of the Attorney General of Texas.  The request contained 70 individual items sought by the Attorney General's Office, under color of state law pursuant to Tex. Bus. Orgs. Code § 12.451.  The organization responded in full by providing all requested information.

14.     On November 29, 2012, the Attorney General's Office took a recorded statement from Lee Johnson, the president and founder of TSTA.

15.     On January 29, 2013, the Attorney General's Office tendered an Agreed Final Judgment and Permanent Injunction (hereinafter "Agreed Final Judgment A") attached hereto as Exhibit A.

16.     Under the proposed Agreed Final Judgment A, each of the board members and the executive director would be forced to resign their respective positions at TSTA.  Exhibit A, p. 15.

17.     In addition, they would be enjoined from holding any position, such as employee, officer, director, volunteer, independent contractor, or otherwise for TSTA, or any other entity in Texas which purports to benefit public safety in any manner or which the public could reasonably believe purports to benefit the public safety in any manner.  Exhibit A, p. 14.

18.     Also under the proposed Agreed Final Judgment A, TSTA would be barred from using The Parker Law Firm for any type of work to be performed for or on behalf of TSTA or any of its members; it would be barred from using Don Dickson for any type of work to be performed for or on behalf of TSTA or any of its members; and it would be barred from using Lee Johnson for any type of work to be performed for or on behalf of TSTA or any of its members.  All three individuals or entities provide or have provided at one time legal services to

4

members of TSTA, which is a benefit provided by TSTA free of charge to members.  TSTA offers this much-needed benefit to all members of the public safety labor organization, and it is clearly stated in its mission.  Exhibit A, p. 12.

19.   On April 15, 2013, the Attorney General's Office tendered an amended Agreed Final Judgment and Permanent Injunction (hereinafter "Agreed Final Judgment B") attached hereto as Exhibit B.

20.   Under the revised proposal, Agreed Final Judgment B, the Texas Attorney General would deprive the individually named board members and executive director of their continued employment and bar them from rendering any volunteer service whatsoever to TSTA or any other public safety organization in the future.  Exhibit B, p. 15.

21.   The Agreed Final Judgment B bars Lee Johnson, Herschel Henderson, Anne Johnson and Claude Hart from:

> Holding, in any manner or capacity, with the exception of due paying members, any position as an employee, volunteer, independent contractor or otherwise for the TEXAS STATE TROOPERS ASSOCIATION or any other entity in Texas which purports to benefit public safety in any manner or the public could reasonably believe to purport to benefit public safety in any manner.

Exhibit B, p. 15.

22.   Although under the revised proposal the Texas Attorney General would allow the individually named board members and executive director to be dues-paying members of the association, he would still prohibit TSTA and its members from associating with the individually named board members and executive director in any other capacity, including, but not limited to, volunteer, legal service provider, employee, officer, director, independent contractor, or any other association whatsoever.

23.     In addition, the Texas Attorney General removed the prohibitions against TSTA's use of the Parker Law firm and Don Dickson for any type of work including legal services under the revised proposal; however, it reincorporates the prohibition against TSTA choosing to hire Lee Johnson for any type of work, including legal services, to be performed for or on behalf of TSTA or any of its members.  Exhibit B, p. 15.

24.     Under the revised proposal, the State of Texas would have a monetary judgment against TSTA in the amount of $1,000,000.  Although that amount would be reduced to $150,000 based on TSTA's continued compliance with the proposed Agreed Final Judgment and Permanent Injunction, no time period for such a reduction in the amount of monetary judgment was provided.  Further, the Attorney General's Office included a springing clause that would render TSTA liable for all remaining penalties, presumably up to the originally imposed $1,000,000, which would be due and owing immediately, in addition to any contempt of court proceeding, if TSTA should fail to comply fully with the Agreed Final Judgment.  Exhibit B, p. 15.

25.     The State of Texas would also have a monetary judgment against TSTA in the amount of $25,000 for attorney's fees and expenses of the Texas Attorney General's Office.  Exhibit B, p. 16.

26.     On May 16, 2013, Defendant tendered a third proposed Agreed Final Judgment (hereinafter "Agreed Final Judgment C") attached hereto as Exhibit C.  The third proposal contains no substantive changes to the terms of the second proposal with respect to TSTA and the individually named Plaintiffs.

27.     On April 30, 2013, the Texas Attorney General posted a consumer alert on the Attorney General's website attached hereto as Exhibit D.  The consumer alert cautions donors

before donating to certain public safety organizations, and specifically cautions donors against contributing to TSTA.  Similarly, the Texas Department of Public Safety posted a "Statement of Telemarketing" on its website, which is attached hereto as Exhibit E.  The public statement advises citizens not to support any organization with "State Troopers" in its name and which solicits public support via telemarketing.

28.     TSTA advocates interests adverse to the Texas Department of Public Safety with respect to many labor and employment issues, and TSTA competes directly with Texas DPS for public support on legislation and issues of public safety facing law enforcement officers and their families.  TSTA represents the rank and file members of the Texas DPS.

29.     The terms of the proposed Agreed Final Judgments would obliterate the leadership of this disfavored public safety labor organization, thereby breaking apart a public sector labor union and permanently enjoining their leadership's right to speak on behalf of and associate freely with TSTA and within the public safety cause, which constitutes a basis for causation of the threatened injury to Plaintiffs.

30.     The Texas Attorney General has authority to bring an action against any person it reasonably believes to be in violation of the Texas Deceptive Trade Practices Act ("DTPA") under Tex. Bus. & Com. Code § 17.47.  "'Person' means an individual, partnership, corporation, association, or other group, however organized."  Tex. Bus. & Com. Code § 17.45.

31.     The Texas Attorney General also has authority to sue domestic and foreign corporate entities that conduct business in the State of Texas for any alleged violation of Texas law pursuant to Tex. Bus. Orgs. Code §§ 12.201, 12.255.

32.     Defendant has authority to enforce Texas law and is charged with specific duties to enforce Texas law.  Therefore, Plaintiffs and Defendant are adverse parties in this case and they will continue to maintain a concrete interest and personal stake in the outcome of the suit.

33.     If TSTA signs the proposed Agreed Final Judgment, which it does not, any proposed version thereof would cause actual, concrete, and imminent injury to Plaintiffs in the form of deprivation of rights guaranteed under the First, Fifth, and Fourteenth Amendments to the United States Constitution as well as monetary judgments, and the threat of criminal or civil proceedings by the Attorney General under the Act.

34.     The imminent threat of deprivation of rights and monetary judgment contained in the Attorney General's proposed Agreed Final Judgment, therefore, constitutes in and of itself an imminent threat of prosecution, and threatens to chill Plaintiffs' rights protected by the First, Fifth, and Fourteenth Amendments, which would cause concrete and particularized injury to Plaintiffs.

35.     Given that Defendant has authority to institute criminal or civil proceedings if Plaintiffs do not sign on to the unconstitutional terms of the Attorney General's proposal, the Attorney General's proposal and authority to prosecute constitute a basis for causation of the threatened injury to Plaintiffs.  Such causation provides a sufficient connection between the injury and the conduct complained of.

36.     Therefore, the injury in question is traceable to the Defendant's challenged action, and the injury is one that could be redressed by a favorable decision.

37.     Because Defendant has sought to enforce Texas laws unconstitutionally against Plaintiffs, and the threat of prosecution is certainly impending, the challenge of such enforcement is ripe for review.

<u>Count I. Freedom of Association: Right to Choose Officers and Directors</u>

38.     Plaintiffs restate and re-allege paragraphs one through 37 and incorporate the same by reference.

39.     The First and Fourteenth Amendments to the United States Constitution protect Plaintiffs' freedom of speech and association, including the right to self-organize and designate representation.  U.S. Const. amends. I, XIV.

40.     Defendant's proposed Agreed Final Judgment would terminate the employment and volunteer board positions of TSTA's officers and directors, including Lee Johnson, Herschel Henderson, Anne Johnson, and Claude Hart.  The Agreed Final Judgment demands they tender their resignations immediately.  Exhibit B, p. 17.

41.     The Agreed Final Judgment also permanently bans TSTA and its members from electing, employing, or using the services of Lee Johnson, Herschel Henderson, Anne Johnson, and Claude Hart as volunteers, officers, directors, employees, legal service providers, agents, independent contractors, or in any other manner.  Exhibit A, p. 14.

42.     Defendant's proposed enforcement of Texas laws as set forth in the Agreed Final Judgment, which carries the threat of immediate prosecution because Plaintiffs do not sign, interferes with the rights of TSTA, individually named Plaintiffs, and other members to freely associate as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

43.     Restricting Plaintiffs from full freedom of association with an advocacy group of their choosing necessarily also restricts their freedom of speech.

44.     TSTA advocates interests adverse to the Texas Department of Public Safety with respect to many labor and employment issues, and TSTA competes directly with Texas DPS for public support on issues of employment and public safety.

45.     TSTA provides legal representation to members for acts committed in good faith performance of their duties as law enforcement officers and for unjust administrative acts against them.

46.     TSTA also engages members of the public in education and advocacy with respect to public safety and labor and employment issues faced by many Texas DPS employees.

47.     TSTA represents the rank and file members of the Texas DPS.

48.     Defendant seeks to obliterate TSTA's leadership, effectively silencing the speakers who advocate on behalf of an unpopular labor union, and permanently restrict their ability to choose with whom they associate.

49.     Defendant's deprivation of Plaintiffs' right to "self-organize" and "designate representatives of their own choosing" also violates long-established United States public policy as stated in 29 U.S.C. § 151 as well as the letter and spirit of Texas corporations law and the organization's own governing instrument.

50.     More specifically, the Agreed Final Judgment requires "that the dues-paying members of TSTA shall submit nominations among themselves for Board of Directors and each position shall be voted on by a quorum of the members."  Exhibit B, p. 17.

51.     However, the organization's articles and bylaws state that membership has no voting rights, which comports with Texas corporations law.  *See* Tex. Bus. Orgs. Code § 22.160 (allowing the articles and bylaws to restrict voting rights of members).  The Attorney General's demands, therefore, seem to propose a forced amendment to their governing instrument and a

forced corporate reorganization in contravention of TSTA's articles and bylaws, Texas corporations law, their constitutional rights to freedom of speech, association and privacy, and clear United States public policy enshrining their right to self-organize and choose their own representation.

52. The Texas Attorney General is constitutionally barred from restructuring the association to its liking.  As such, this overreaching state action would violate TSTA's freedom of association, speech, and corresponding right to privacy, as well as clearly established public policy forbidding government intrusion into the organization and representation of labor unions, public or private.

53. Defendants fail to cite any state interest, let alone a compelling one, for such a grave abuse of state power.  Further, the means chosen by the Attorney General, even if in furtherance of some compelling, non-discriminatory state interest, are not narrowly tailored.

54. Therefore, Plaintiffs are entitled to relief for this constitutional violation pursuant to Title 42 U.S.C. § 1983.

### Count II. Freedom of Association: Right to Join in Other Organizations

55. Plaintiffs restate and re-allege paragraphs one through 54 and incorporate the same by reference.

56. The First and Fourteenth Amendments to the United States Constitution guarantee the freedom of speech and association.  U.S. Const. amends. I, XIV.

57. Defendant's proposed Agreed Final Judgment, which carries the immediate threat of prosecution, would bar individually named Plaintiffs from holding any position, whether volunteer or paid, with any entity that purports to benefit public safety other than as dues-paying members.  Exhibit A, p. 14.

11

58.     Defendant's actions, therefore, violate individual Plaintiffs' right to associate with organizations and parties of their choosing in violation of the United States Constitution.

59.     Restricting Plaintiffs from full freedom of association with an advocacy group of their choosing necessarily also restricts their freedom of speech.

60.     Plaintiffs are, therefore, entitled to relief for this constitutional violation pursuant to Title 42 U.S.C. § 1983.

### Count III. Due Process: Right to Choose Counsel

61.     Plaintiffs restate and re-allege paragraphs one through 60 and incorporate the same by reference.

62.     The due process clause of the Fifth and Fourteenth Amendments to the United States Constitution guarantees a party's ability to choose its own counsel.  U.S. Const. amends. V, XIV.

63.     Defendant has violated Plaintiffs' right to due process by attempting to impose a restriction on their right to choose Lee Johnson as counsel for TSTA in the revised proposals, and Don Dickson and The Parker Law Firm in the original proposal.

64.     Plaintiffs have the absolute right to choose their own counsel.  *Bywaters v. United States*, 670 F.3d 1221, 1234 n.12 (Fed. Cir 2012).

65.     It is the rule of the Fifth Circuit that there is a qualified right to choose one's own counsel against the backdrop of judicial discretion.  *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) (cited by *Norton v. Tallahassee Mem'l Hosp.*, 700 F.2d 617, 618 (11th Cir. 1983) (involving disqualification of counsel in a civil class action for misconduct).

66.     There has been no showing of impropriety such that Defendant can constitutionally bar Plaintiffs from employing counsel of their choice.

67.     Plaintiffs are entitled to relief for this constitutional violation pursuant to Title 42 U.S.C. § 1983.

<u>Count IV.  Prior Restraint of Protected Speech and Association</u>

68.     Plaintiffs restate and re-allege paragraphs one through 67 and incorporate the same by reference.

69.     If there was anything that the Framers intended to prohibit when they drafted the First Amendment, it was prior restraint on the freedoms of speech and association.  *See Near v. Minn.*, 283 U.S. 697, 714 (1931); *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (U.S. 1958) (quoting *Thomas v. Collins*, 323 U.S. 516 (1945)).

70.     District Courts in the Fifth Circuit have noted that "[a] prior restraint of expression comes before [the] court with 'a heavy presumption against its constitutional validity.'"  *Millennium Rests. Group, Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 664 (N.D. Tex. 2001) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)); *see also Gay Student Servs. v. Texas A & M Univ.*, 737 F.2d 1317, 1325 (5th Cir. 1984).

71.     The proposed permanent injunction and threat of immediate prosecution seeking same operates as a prior restraint on the freedoms of speech and association because it actually forbids speech and association before the communications or activities are to occur, and it is issued by a court, even if stipulated.  *See CBS v. Davis*, 510 U.S. 1315, 1317 (1994); *Alexander v. United States*, 509 U.S. 544, 550 (1993); *Near*, 283 U.S. at 716 (1931).

72.     The Texas Attorney General's demand that all of the board members and officers "immediately tender their resignations" creates a chilling effect on the labor organization's ability to associate freely and to choose who may speak on its behalf.  *See* Exhibit B, p. 17.  The Texas Attorney General's actions deprive TSTA of its chosen leadership and, therefore, its

13

elected speakers who advocate its cause and disseminate its message, thereby restricting the voice of the rank and file members of the Texas DPS as represented by TSTA.

73.  Defendant's demands also permanently ban individually named Plaintiffs from working with or volunteering for TSTA or any other public safety organization in the future. They would be barred from an entire professional field – their chosen cause.

74.  As such, Defendant purports to restrain the voices of competing labor and public safety interests by tearing apart the association's organizational structure, extinguishing its leadership, and forbidding the individually named Plaintiffs from serving any other public safety organization in the State of Texas in any capacity, other than dues-paying members.

75.  Such state action constitutes blatant discrimination against a disfavored labor organization that advocates interests directly adverse to the Texas Department of Public Safety and operates as a prior restraint against protected speech and association.

76.  Future leaders of the organization will no doubt be concerned about the state's interference.  By naming the individuals in the agreed judgment, the state conveyed the threat that any individual the state does not like can be personally attacked by it, for political purposes or for naught.  This is the "chilling effect" resulting from prior restraint.

77.  In addition to the aforementioned prior restraints on Plaintiffs' protected speech and association, Defendant Texas Attorney General Greg Abbot posted a consumer alert on his website on April 30, 2013, cautioning donors not to donate to certain kinds of public safety organizations, including labor organizations, and specifically TSTA.  The consumer alert is attached hereto as Exhibit D.

78.     The Texas Attorney General cautions donors to think twice before donating merely because TSTA has high fundraising costs.  Exhibit D, p. 2.  Attorney General Greg Abbot writes:

> Unfortunately, a few organizations that claim to represent law enforcement may not actually spend donors' contributions on items that directly help Texas peace officers.
>
> Consider, for example, the Texas State Troopers Association (TSTA), which hires professional telemarketers to call potential donors for contributions. While the paid solicitor might have a good sales pitch urging potential donors to support the state police, much of the money raised by TSTA doesn't actually go to officers or their families. According to a recent IRS filing by the TSTA, its telemarketing efforts yielded $3.59 million through telephone solicitations. Of that amount, more than 75% – or $2.78 million – was spent on "professional fundraising fees." The IRS documents also indicate the organization spent just $10,800 on trooper death benefits; $22,000 on a "trooper event;" and $72,000 on contract lobbyists.

Exhibit D, p. 2.

79.     Relying on the unconstitutional presumption that high fundraising fees alone are indicative of fraud, *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 611-12 (2003), Texas Attorney General Greg Abbot alleges that the association does not directly help Texas peace officers and cautions the public against giving to TSTA.  This, too, operates as a prior restraint.

80.     Such publication, therefore, constitutes a prior restraint and a violation of TSTA's right to equal protection of the laws as guaranteed by the First and Fourteenth Amendments to the United States Constitution, and substantiates in writing Defendant's discrimination against this particular public safety organization, and all public safety and law enforcement organizations who hire professional telefunders to solicit funds on their behalf.

15

81.     High fundraising fees alone are not enough to constitute fraud, nor do they provide any reasonable justification for denying TSTA equal protection and due process as required by the First and Fourteenth Amendments. *See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003).

82.     Finally, Defendant's violation of Plaintiffs' Eighth Amendment right to be free from excessive fines also operates as a prior restraint in that the proposed fines are so excessive they would render the organization near or actually insolvent and, therefore, unable to speak or associate at all.

83.     The Attorney General imposed fines in the proposed Agreed Final Judgment of $1,000,000 under the DTPA. This lofty amount exceeds the statutory maximum he is authorized to impose. *See* Tex. Bus. & Com. Code § 17.47 (maximum penalty under DTPA of $20,000 per violation). Defendant's alleged 13 violations in the proposed Agreed Final Judgment would allow a maximum penalty of $260,000.

84.     The Eighth Amendment is designed "to prevent *the government* from abusing its power to punish. . . ." *See Austin v. United States*, 509 U.S. 602, 607 (1993) (citation omitted) ("[T]he Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government."). Defendants' conduct is not only unreasonable, it is malicious and discriminatory.

85.     The prior restraints imposed by the Attorney General, including the permanent injunction and immediate threat of prosecution, the consumer alert, and the unreasonable civil penalties constitute violations of Plaintiffs' rights, privileges, and immunities secured by the First, Eighth, and Fourteenth Amendments to the United States Constitution; therefore, Plaintiffs have a cause of action against Defendant pursuant to Title 42 U.S.C. § 1983.

Count V. Due Process: The Right to Engage in a Common Occupation or Profession

86.     Plaintiffs restate and re-allege paragraphs one through 85 and incorporate the same by reference.

87.     The United States Supreme Court has long recognized that substantive due process protects the fundamental right to engage in one's chosen occupation, and guarantees that liberty interest may not be interfered with by arbitrary and unreasonable state action, especially under the guise of the public interest.  *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), *abrogated on other grounds by Abbott v. Bragdon,* 912 F. Supp. 580, 595 (D. Me. 1995); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 573 (U.S. 1972); *Schware v. Bd. of Exam'rs*, 353 U.S. 232, 238-39 (1957).

88.      The Agreed Final Judgment purports to bar the individually named board members and officers from choosing any occupation or profession within the broad field of public safety, a field to which they have dedicated more than four decades of professional service.

89.     This sweeping ban presumably extends to the field of law enforcement as the Attorney General fails to define "public safety" in the Agreed Final Judgment, having defined only "law enforcement-related organization," which does not mention the words "public safety."

90.     Therefore, Defendant's permanent injunction on Plaintiffs' employment in the "public safety" sector imposes a vague, arbitrary and capricious restriction on Plaintiffs' right to engage in one's chosen occupation in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

91.     Further, Defendant fails to provide procedural due process for its deprivation of Plaintiffs' liberty interest.  *See Goss v. Lopez*, 419 U.S. 565, 574-75 (1975).  If the Texas

Attorney General is found to have authority to compel the resignation of these individuals, then such authority to fire private employees, especially the leaders of a public sector labor union representing state employees, is legally equivalent to the state's termination of a person's interest in continued employment by the state without procedural due process as required by the Fourteenth Amendment.  *See Bell v. Burson*, 402 U.S. 535, 541-42 (1971); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-43 (1985); *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1380 (9th Cir. 1989); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (requiring notice and an opportunity to be heard).

92.     The Attorney General's restrictions, therefore, violate the individually named Plaintiffs' right to due process and deprive them of their liberty interest in choosing their own common occupation as guaranteed by the Fourteenth Amendment.

93.     As such, Plaintiffs are entitled to relief for this constitutional violation pursuant to Title 42 U.S.C. § 1983.

## VII. APPLICABLE LAW

94.     The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. CONST. Amends. I, XIV (as incorporated to the states through the Fourteenth Amendment to the United States Constitution).

95.     The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution guarantee a party's ability to choose its own counsel.  U.S. CONST. Amends. V, XIV.

96.     The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. CONST. Amends. V, XIV.

97.     The Eighth Amendment to the United States Constitution protects an individual's right to be free from excessive fines and abuse of government power to punish.  U.S. CONST. Amends. VIII, XIV.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiffs pray the Court, under one or all of the aforementioned counts, issues the following:

a.     A declaration that the Defendant has violated the Plaintiffs' constitutional rights and, as a result, that the Plaintiffs have been damaged,

b.     An order enjoining Defendant from infringing on the constitutional rights of Plaintiffs,

c.     An order requiring that the Defendant pay all costs, interest, and attorney's fees as may be incurred with this civil action pursuant to Title 42 U.S.C. § 1988, and

d.     An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiffs' grievances.

Respectfully Submitted,


By:  _/s/ Errol Copilevitz_____
                **COPILEVITZ & CANTER, LLC**
                Errol Copilevitz (*pro hac vice* pending)
                310 West 20th Street, Suite 300
                Kansas City, MO 64108
                Tel: (816) 472-9000
                Fax: (816) 472-5000

                and,

**THE LAW OFFICE OF E.G. MORRIS**
Gerry Morris
608 W. 12th Street, Suite B
Austin, Texas 78701
(512) 478-0758
egm@egmlaw.com

**ATTORNEYS FOR PLAINTIFFS**